STEVEN W. BALSTER
IL Bar No. 6189072, sbalster@ftc.gov
JONATHAN L. KESSLER
CO Bar No. 15094, jkessler@ftc.gov
MARIA DEL MONACO
OH Bar No. 0067930, mdelmonaco@ftc.gov
Federal Trade Commission
1111 Superior Ave., Suite 200
Cleveland, OH 44114
216-263-3401 (Balster)
216-263-3436 (Kessler)
216-263-3405 (Del Monaco)
216-263-3426 (FAX)

STACY PROCTER (Local Counsel)
CA Bar No. 221078, sprocter@ftc.gov
Federal Trade Commission
10877 Wilshire Blvd, Suite 700
Los Angeles, CA 90024
Tel: 310-824-4343; Fax: 310-824-4380

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>**A TO Z MARKETING, INC.,** a Nevada corporation, also dba Client Services;<br><br>**APEX MEMBERS, LLC,** a Nevada limited liability company, also dba Apex Solutions, also dba MacArthur Financial Group;<br><br>**APEX SOLUTIONS, INC.,** a Nevada corporation; | Case No. **SACV13-919 DOC(RNBx)**<br><br>**PLAINTIFF FEDERAL TRADE COMMISSION'S COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF**<br><br>**UNDER SEAL** |

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT
JUN 18 2013
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

**BACKEND, INC.,** a California corporation, formerly known as Mortgage Modification Center, also dba MMC, Inc.;

**EXPERT PROCESSING CENTER, INC.,** a Nevada corporation;

**SMART FUNDING CORP.,** a Nevada corporation;

**WILLIAM D. GOODRICH, ATTY, INC.,** a California corporation, also dba WDG, Attorney at Law;

**RATAN BAID,** individually and as an Officer, Director, or Manager of Defendants A to Z Marketing, Inc., Apex Members, LLC, and Smart Funding Corp.;

**MADHULIKA BAID,** aka Madhu Baid, individually and as an Officer, Director, or Manager of Defendants A to Z Marketing, Inc., Apex Members, LLC, and Smart Funding Corp.; and

**WILLIAM D. GOODRICH,** individually and as an Officer, Director, or Manager of William D. Goodrich, Atty, Inc., also dba The Apex Solution,

Defendants.

## PLAINTIFF FEDERAL TRADE COMMISSION'S COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.      The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the 2009 Omnibus Appropriations Act, Public Law 111-8, Section 626, 123 Stat. 524, 678 (Mar. 11, 2009) ("Omnibus Act"), as clarified by the Credit Card Accountability Responsibility and Disclosure Act of 2009, Public Law 111-24, Section 511, 123 Stat. 1734, 1763-64 (May 22, 2009) ("Credit Card Act"), and amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law 111-

203, Section 1097, 124 Stat. 1376, 2102-03 (July 21, 2010) ("Dodd-Frank Act"),
12 U.S.C. § 5538, to obtain temporary, preliminary, and permanent injunctive
relief, rescission or reformation of contracts, restitution, the refund of monies paid,
disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts
or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the
Mortgage Assistance Relief Services Rule, 16 C.F.R. Part 322 ("MARS Rule"),
recodified as Mortgage Assistance Relief Services, 12 C.F.R. Part 1015
("Regulation O"), in connection with the marketing and sale of mortgage
assistance relief services ("MARS").

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C.
§§ 1331, 1337(a), and 1345, 15 U.S.C. §§ 45(a), 53(b), and 57b, and Section 626
of the Omnibus Act, as clarified by Section 511 of the Credit Card Act, and
amended by Section 1097 of the Dodd-Frank Act, 12 U.S.C. § 5538.

3.     Venue is proper in this district under 28 U.S.C. §§ 1391(b), (c), and
(d), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.     The FTC is an independent agency of the United States Government
created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC
Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or
affecting commerce. In addition, the FTC enforces the MARS Rule, 16 C.F.R. Part
322, effective December 29, 2010, and its recodification as Regulation O, 12
C.F.R. Part 1015, effective December 30, 2011. Dodd-Frank Act § 1097, 12
U.S.C. § 5538. Among other things, the MARS Rule and Regulation O require
MARS providers to make certain disclosures, prohibits MARS providers from
making certain representations, and effective January 31, 2011, prohibits MARS
providers from collecting a fee in advance of the consumer's acceptance of

mortgage assistance relief obtained by the MARS provider.

5. The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act, the Omnibus Act as clarified by the Credit Card Act and amended by the Dodd-Frank Act, the MARS Rule, and Regulation O, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A)-(B), 57b, 6102(c) and 6105(b), § 626, 123 Stat. 678, as clarified by § 511, 123 Stat. at 1763-64, and amended by § 1097, 124 Stat. at 2102-3, 12 U.S.C. § 5538.

## **<u>DEFENDANTS</u>**

6. Defendant **A to Z Marketing, Inc.**, also doing business as Client Services, is a Nevada Corporation that identifies its principal place of business as 1809 East Dyer Road, Santa Ana, California. As part of the common enterprise described in paragraph 16, A to Z Marketing, Inc., markets, provides, offers to provide, or arranges for others to provide MARS, as defined in 16 C.F.R § 322.2, recodified as 12 C.F.R. § 1015.2. A to Z Marketing, Inc., transacts or has transacted business in this District and throughout the United States.

7. Defendant **Apex Members, LLC**, also doing business as Apex Solutions and the MacArthur Financial Group, is a Nevada limited liability company that identifies its principal place of business as 2360 Corporate Circle, Henderson, Nevada. As part of the common enterprise described in paragraph 16, Apex Members, LLC, markets, provides, offers to provide, or arranges for others to provide MARS, as defined in 16 C.F.R § 322.2, recodified as 12 C.F.R. § 1015.2. Apex Members, LLC, transacts or has transacted business in this District and throughout the United States.

8. Defendant **Apex Solutions, Inc.**, is a Nevada corporation that

identifies its principal place of business as 2360 Corporate Circle, Henderson, Nevada.  As part of the common enterprise described in paragraph 16, Apex Solutions, Inc., markets, provides, offers to provide, or arranges for others to provide MARS, as defined in 16 C.F.R § 322.2, recodified as 12 C.F.R. § 1015.2. Apex Solutions, Inc., transacts or has transacted business in this District and throughout the United States.

9.      Defendant **Backend, Inc.**, is a California corporation that identifies its principal place of business as 2601 Main Street, Irvine, California.  As part of the common enterprise described in paragraph 16, Backend, Inc., markets, provides, offers to provide, or arranges for others to provide MARS, as defined in 16 C.F.R § 322.2, recodified as 12 C.F.R. § 1015.2.  Backend, Inc., transacts or has transacted business in this District and throughout the United States.

10.      Defendant **Expert Processing Center, Inc.**, is a Nevada corporation that identifies its principal place of business as 2360 Corporate Circle, Henderson, Nevada.  As part of the common enterprise described in paragraph 16, Expert Processing Center, Inc., markets, provides, offers to provide, or arranges for others to provide MARS, as defined in 16 C.F.R § 322.2, recodified as 12 C.F.R. § 1015.2.  Expert Processing Center, Inc., transacts or has transacted business in this District and throughout the United States.

11.      Defendant **Smart Funding Corp**. is a Nevada corporation that identifies its principal place of business as 2360 Corporate Circle, Henderson, Nevada..  As part of the common enterprise described in paragraph 16, Smart Funding Corp. markets, provides, offers to provide, or arranges for others to provide MARS, as defined in 16 C.F.R § 322.2, recodified as 12 C.F.R. § 1015.2. Smart Funding Corp. transacts or has transacted business in this District and throughout the United States.

12.      Defendant **William D. Goodrich, Atty, Inc.**, also doing business as

WDG, Attorney at Law, is a California corporation that identifies its principal place of business as 171 Promenade, Irvine, California.  As part of the common enterprise described in paragraph 16, William D. Goodrich, Atty, Inc., markets, provides, offers to provide, or arranges for others to provide MARS, as defined in 16 C.F.R § 322.2, recodified as 12 C.F.R. § 1015.2.  William D. Goodrich, Atty, Inc. transacts or has transacted business in this District and throughout the United States.

13.     Defendant **Ratan Baid** is an individual who, acting alone or in concert with others, has operated and continues to operate businesses that market, provide, offer to provide, or arrange for others to provide MARS, as defined in 16 C.F.R. § 322.2, recodified as 12 C.F.R. § 1015.2.  Ratan Baid, acting alone or in concert with others, and through interrelated entities described in paragraphs 6 through 12, has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  At times material to this Complaint, Ratan Baid is or was a Director, President, Officer, or Manager of Defendants A to Z Marketing, Inc., Apex Members, LLC, and Smart Funding Corp.  In connection with the matters alleged herein, Ratan Baid transacts or has transacted business in this District and throughout the United States.

14.     Defendant **Madhulika Baid** is an individual who, acting alone or in concert with others, has operated and continues to operate businesses that market, provide, offer to provide, or arrange for others to provide MARS, as defined in 16 C.F.R. § 322.2, recodified as 12 C.F.R. § 1015.2.  Madhulika Baid, acting alone or in concert with others, and through interrelated entities described in paragraphs 6 through 12, has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  At times material to this Complaint, Madhulika Baid is or was a Director, Officer, or Manager of Defendants A to Z Marketing, Inc., Apex Members, LLC, and Smart Funding

Corp.  In connection with the matters alleged herein, Madhulika Baid transacts or has transacted business in this District and throughout the United States.

15.     Defendant **William D. Goodrich** is an individual who, acting alone or in concert with others, has operated and continues to operate businesses that market, provide, offer to provide, or arrange for others to provide MARS, as defined in 16 C.F.R. § 322.2, recodified as 12 C.F.R. § 1015.2.  William D. Goodrich, acting alone or in concert with others, and through interrelated entities described in paragraphs 6 through 12, has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  At times material to this Complaint, William D. Goodrich is or was a Director, Officer, or Manager of Defendant William D. Goodrich, Atty, Inc.  In connection with the matters alleged herein, William D. Goodrich transacts or has transacted business in this District and throughout the United States.

## COMMON ENTERPRISE

16.     At times material to this Complaint, Defendants A to Z Marketing, Inc., Apex Members, LLC, Apex Solutions, Inc., Backend, Inc., Expert Processing Center, Inc., Smart Funding Corp., and William D. Goodrich, Atty, Inc., have operated as a common enterprise while engaging in the unlawful acts and practices set forth below.  These Defendants have conducted those acts and practices through an interrelated network of companies that have common ownership, business functions, employees, and office locations; that have commingled funds; and/or that have shared one another's marketing material.  Because these Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below.  Defendants Ratan Baid, Madhulika Baid, and William D. Goodrich have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Defendants that constitute the common enterprise.

## COMMERCE

17.    At all times relevant to this complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS PRACTICES

### Overview

18.    From at least mid-2010 to present, through operation of the common enterprise, in a nationwide scheme, Defendants have engaged in a course of conduct to advertise, market, sell, provide, offer to provide, or arrange for others to provide MARS, including loan documentation and transaction services, and loan modification services.

19.    Defendants prey on financially distressed homeowners by luring them into membership programs or loan modification services with promises that they will receive legal representation from a real estate attorney who will negotiate with their lenders to save their homes from foreclosure or make their mortgage payments substantially more affordable.  In addition to legal representation, Defendants purport to provide consumers enrolled in certain of their programs with forensic loan audits to identify errors in their mortgage loan documents and to ferret out predatory lending practices.  Defendants also purport to gather information that attorneys will use to win concessions with lenders.  Consumers, however, do not receive the promised services.

20.    Defendants have marketed their services using a number of trade names, including but not limited to, Apex Members, Apex Solutions, McArthur Financial Services, William D. Goodrich, Attorney at Law, WDG, McGoldrick Law Center, Burke Law Center, Cronauer Law Center, Nationwide Law Center, United States Law Center, Interstate Law Group, Top Legal Advocates, and Home Loan Services Law Center.

21.     To support the provision of MARS by these trade names, Defendants rely on a network of support companies, including but not limited to, Defendants A to Z Marketing, Inc., Backend, Inc., Expert Processing Center, Inc., and Smart Funding Corp.  These companies, individually or in combination, perform critical functions for the common enterprise, including but not limited to, compiling sales leads of consumers who may be interested in obtaining a home-loan modification, printing and mailing sales information, employing telemarketers to promote the MARS, registering and maintaining websites, and processing consumers' financial information purportedly to share with the consumer's lender.

22.     Consumers who agree to pay Defendants' fee of $2,000 to $4,000 are then typically asked to sign an agreement to allow Client Services, which is a trade name registered and used by Defendant A to Z Marketing, Inc. (which is itself a corporate name not disclosed to consumers), to immediately debit at least a down payment of Defendants' fee directly out of their accounts.  Those who make only a down payment are then required to make additional payments until the full amount is paid.

**The Apex Marketing Scheme**

23.     From the beginning of their MARS operations and continuing to at least sometime in 2012, Defendants sold their MARS as Apex Members, Apex Solutions, William D. Goodrich, Atty at Law, and MacArthur Financial Services. Consumers interested in Defendants' MARS were typically offered a package of contracts.  Included were:

a.     a Membership Agreement, whereby the consumer agreed to become a member in order to receive various financial services from Defendants, including MARS;

b.     a Mortgage Modification Service Agreement, whereby Defendant William D. Goodrich agreed to represent the consumer in obtaining a

loan modification, but which was available only to consumers who become members by entering into the Membership Agreement;

c.    a release, allowing Defendants William D. Goodrich and Expert Processing Center access to the consumer's financial records in order to conduct a forensic loan audit; and

d.    an ACH Payment Authorization, allowing Client Services (*i.e.,* Defendant A to Z Marketing, Inc.), to withdraw funds from the consumer's bank account or charge the consumer's debit or credit card for payment of an up-front fee.

**Attorney Front Organizations**

24.    Starting sometime in 2011 and continuing into 2013, Defendants changed slightly the way they did business.  Instead of holding out Defendant William D. Goodrich as an attorney who would represent the consumer, Defendants have established relationships with several attorneys, helping them set up purported law firms to do loan modifications, and then have told consumers that the lead or named attorney, or another attorney at the purported law firm, would represent them.  Purported law firms established in this manner include, but are not limited to, the McGoldrick Law Center, the Burke Law Center, and the Cronauer Law Center.  To set up these purported law firms, Defendants designed, registered, or maintained websites, provided sales materials and agreements, and provided marketing and backend services.  Typically, the lead or named attorney has disassociated him or herself with Defendants within a brief period of time upon learning the true nature of Defendants' operations.  At least one of the websites Defendants established in this manner, for the Burke Law Center, together with the toll-free number displayed there, remained operational into 2013, despite that attorney's prior disassociation with Defendants.

25.    Also at about this time, Defendants established relationships with

other attorneys to create generically named companies purporting to be law firms including, but not limited to, the Nationwide Law Center, the United States Law Center, the Interstate Law Group, and Top Legal Advocates, some or all of which have currently operational websites that Defendants designed, registered, or maintained.  These "firms" purport to offer MARS interstate through nearly identical networks of associated attorneys.

26.     Defendants retain operational control of these purported law firms. Defendants retain complete responsibility for compiling sales leads of consumers who may be interested in obtaining a home-loan modification, printing and mailing sales information, employing telemarketers to promote the MARS, registering and maintaining websites, and processing consumers' financial information purportedly to share with the consumer's lender.

27.     Consumers interested in Defendants' MARS from these purported law firms have been typically offered a package of contracts.  Included have been:

a.     a Mortgage Modification Service Agreement, whereby the lead or named attorney, or another attorney, would agree to represent the consumer in obtaining a loan modification;

b.     a release allowing staff at Defendant Expert Processing Center to obtain personal financial information from the consumer's lender; and

c.     an agreement authorizing Client Services (*i.e.*, Defendant A to Z Marketing, Inc.), to withdraw funds from the consumer's bank account.

**The Sales Pitch**

28.     Defendants initiate contact with consumers in many ways, including but not limited to unsolicited mailings or flyers, unsolicited outbound telemarketing calls, inbound telephone calls from consumers originating from Defendants' websites or other marketing materials, and outbound calls to

consumers.

29.    Defendants' flyers, a typical example of which is attached to this Complaint as Attachment A, are official-looking forms entitled "Loan Modification Notification" and contain file numbers and other identifying numbers preceded by the letters "MOD."  Further down on the form there is a box labeled "Total Loan Amount" with an amount purporting to be the consumer's outstanding loan amount.  The form continues with a notification in bold, all-caps type, informing the consumer:

**NOTICE REGARDING MORTGAGE REDUCTION**

**YOUR IMMEDIATE PARTICIPATION IS RECOMMENDED**

The notice continues by saying, among other things:

Based on your mortgage lender information and your property profile provided to us you may be qualified for a loan modification.  This includes the following:

1. Lower your monthly mortgage payments.

2. Lower your monthly interest rate to as low as 2% fixed rate, 30 or 40 year term.

3. Modify your ARM or Option ARM into a lower fixed rate.

The notice then advises that "**YOU MAY FORFEIT LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION**[,]" and **WE CAN HELP SAVE YOUR HOME**[.]"  The notice then provides a toll-free number for a "free consultation."

30.    An earlier version of this flyer, attached to this Complaint as Attachment B, contains similar information and formatting, but instead of stating "**YOUR IMMEDIATE PARTICIPATION IS RECOMMENDED,**" it states "**YOUR IMMEDIATE PARTICIPATION IS REQUIRED**."  It also states that "[t]housands of homeowners have taken advantage of this opportunity and have reduced their monthly mortgage payment by 30-60%."

31.    Defendants also advertise their mortgage assistance relief services on

broadcast media and on the internet.  Like the flyers Defendants sent, these include a toll-free number that consumers can call for more information.

32.     Often, Defendants' websites contain a testimonial section including experiences of what purport to be satisfied customers.  One such testimonial states "I just got a call from Mick at your office.  He was able to get my mortgage payment cut in half from my lender!  I have attached pictures of us in front of our home.  Thanks to you, our home is safe and we are FINALLY in a stable financial position."  Another states "[t]hank you for doing such a brilliant job on my mortgage modification.  Just 2 months ago, the bank was ready to foreclose and we were looking for a rental.  Now, our home is safe and we couldn't be happier!"  Similar testimonials often appear in sales materials Defendants send directly to consumers.

33.     Consumers who receive outbound calls, or who call the toll-free number listed in Defendants' sales materials or websites, then speak to a representative.  In numerous instances, Defendants' representatives have claimed that Defendant William D. Goodrich, or another attorney, would represent them and negotiate with their lender to obtain a loan modification, and that the attorney would conduct a forensic audit to look for illegalities in the original lending documents to gain leverage with the lender.

34.     In numerous instances, Defendants' representatives have told consumers that Defendants or Defendants' affiliated attorneys would get them a loan modification.

35.     In numerous instances, Defendants' representatives have told consumers that they were guaranteed to obtain a loan modification that would make their mortgage payments substantially more affordable.

36.     In numerous instances, Defendants' representatives have told consumers that they could have their interest rates reduced to as low as 2% or have

their principal balance reduced.

37.    In numerous instances, Defendants' representatives have told consumers that they should stop paying on their mortgages.

38.    In numerous instances, Defendants' representatives have told consumers that they should not contact their lenders directly.

39.    In numerous instances, Defendants' representatives have told consumers that Defendants or their affiliated attorneys could get consumers a loan modification in a brief period of time, such as a few months or within 60 to 90 days.

**Post Contract**

40.    Consumers who desire Defendants' services then sign the contracts provided and authorize Defendants to withdraw an advance fee from their accounts ranging from about $2,000 to $4,000, or a down payment on that amount. Defendants, through Client Services (*i.e.,* Defendant A to Z Marketing, Inc.), then withdraw these fees either in a one-time transfer or in installments.

41.    Typically, consumers who contract with Defendants are assigned to one or more non-attorney customer-service representatives who act as their primary points of contact.  Often, consumers attempt to call the representative assigned to them, but are unable to reach a live person without making repeated attempts.  Often, consumers find after many months that no progress has been made on their behalf with their lenders.

42.    In numerous instances, consumers who contract with Defendants do not receive legal representation.  Although they may be assigned an attorney in a nominal sense, many consumers never meet or speak with Defendant William D. Goodrich, an attorney working for the purported law firms discussed in paragraphs 24 and 25, or any other attorney, much less an attorney in the state where they reside or where the property is located.  Moreover, while Defendants lead

consumers to believe that an attorney from one of the law centers will represent them, Defendants retain most of the fees paid, and in many cases, fail to inform the law center that a client had been obtained, fail to turn over financial information the client provided, or work on the consumer's file with little or no attorney involvement, much less the skilled legal advocacy promised.

43.    In numerous instances, consumers who contracted with Defendants have suffered significant economic injury, including paying hundreds or thousands of dollars to Defendants and receiving little or no service in return, going into foreclosure, and even losing their homes.

44.    In numerous instances, after consumers have contracted with Defendants and paid the requested advance fees, Defendants have failed to obtain a loan modification, principal reduction, or other relief to stop foreclosure or make consumers' mortgage payments substantially more affordable.

## **VIOLATIONS OF THE FTC ACT**

45.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

46.    Misrepresentations or omissions of material fact that are likely to mislead consumers constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## **COUNT I**

47.    In numerous instances, in connection with the offering and sale of mortgage assistance relief services, Defendants have represented, expressly or by implication, that Defendants' services generally will obtain for consumers mortgage loan modifications that will make consumers' payments substantially more affordable, or will help consumers avoid foreclosure.

48.    In truth and in fact, Defendants generally do not obtain for consumers modifications of mortgage loans that will make consumers' payments substantially

more affordable, and generally do not help consumers avoid foreclosure.

49.     Therefore, Defendants' representation as set forth in Paragraph 47 is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT II**

50.     In numerous instances, in connection with the offering and sale of mortgage assistance relief services, Defendants have represented, expressly or by implication, that, as a result of various loan audits provided by Defendants, including a forensic loan audit, they generally will obtain for consumers mortgage loan modifications that will make consumers' payments substantially more affordable, or will help consumers avoid foreclosure.

51.     In truth and in fact, Defendants generally do not obtain for consumers mortgage loan modifications that will make consumers' mortgage payments substantially more affordable, and generally do not help consumers avoid foreclosure as a result of the various loan audits, research, and reviews provided by Defendants.

52.     Therefore, Defendants' representation as set forth in Paragraph 50 is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**THE MARS RULE**

53.     In 2009, Congress directed the FTC to prescribe rules prohibiting unfair or deceptive acts or practices with respect to mortgage loans.  Omnibus Act § 626, 123 Stat. at 678, as clarified by Credit Card Act § 511, 123 Stat. at 1763-64. Pursuant to that direction, the FTC promulgated the MARS Rule, 16 C.F.R. Part 322, all but one provision of which became effective on December 29, 2010.  The remaining provision, Section 322.5, became effective on January 31, 2011.

54.     The MARS Rule and Regulation O define "mortgage assistance relief

service provider" as "any person that provides, offers to provide, or arranges for others to provide, any mortgage assistance relief service" other than the dwelling loan holder, the servicer of a dwelling loan, or any agent or contractor of such individual or entity.  16 U.S.C. § 322.2, recodified as Regulation O, 12 C.F.R. § 1015.2.

55.     The MARS Rule and Regulation O prohibit any mortgage assistance relief service provider from requesting or receiving payment of any fee or other consideration until the consumer has executed a written agreement between the consumer and the consumer's loan holder or servicer that incorporates the offer that the provider obtained from the loan holder or servicer.  16 C.F.R. § 322.5(a), recodified as 12 C.F.R. § 1015.5(a).

56.     The MARS Rule and Regulation O prohibit any mortgage assistance relief service provider from misrepresenting, expressly or by implication, any material aspect of any mortgage relief service, including but not limited to:

a.     the likelihood of negotiating, obtaining, or arranging any represented service or result.  16 C.F.R. § 322.3(b)(1), recodified as Regulation O, 12 C.F.R. § 1015.3(b)(1); and

b.     the amount of time it will take the mortgage assistance relief service provider to accomplish any represented service or result.  16 C.F.R. § 322.3(b)(2), recodified as Regulation O, 12 C.F.R. § 1015.3(b)(2).

57.     The MARS Rule and Regulation O prohibit any mortgage assistance relief service provider from failing to place a statement in every general commercial communication disclosing that (i) the provider is not associated with the government and its service is not approved by the government or any lender, and (ii) in certain cases, a statement disclosing that the lender may not agree to modify a loan, even if the consumer uses the provider's service.  16 C.F.R. § 322.4(a)(1)-(2), recodified as 12 C.F.R. § 1015.4(a)(1)-(2).

58.     The MARS Rule and Regulation O prohibit any mortgage assistance relief service provider from failing to place a statement in every consumer-specific commercial communication (i) confirming that the consumer may stop doing business with the provider or reject an offer of mortgage assistance without having to pay for the services, (ii) disclosing that the provider is not associated with the government and its service is not approved by the government or any lender, (iii) in certain cases, a statement disclosing that the lender may not agree to modify a loan, even if the consumer uses that provider's service, and (iv) in certain cases, a statement disclosing that if they stop paying their mortgage, consumers may lose their home or damage their credit. 16 C.F.R. § 322.4(b)(1)-(3) and (c), recodified as 12 C.F.R. § 1015.4(b)(1)-(3) and (c).

59.     Pursuant to the Omnibus Act § 626, 123 Stat. at 678, as clarified by the Credit Card Act § 511, 123 Stat. at 1763-64 and amended by the Dodd-Frank Act § 1097, 124 Stat. at 2102-03, 12 U.S.C. § 5538, and pursuant to Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the MARS Rule and Regulation O constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## **VIOLATIONS OF THE MARS RULE**

### **COUNT III**

### **Collection of Advance Payments**

60.     In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants ask for or receive payment before consumers have executed a written agreement between the consumer and the loan holder or servicer that incorporates the offer obtained by Defendants, in violation of the MARS Rule, 16 C.F.R. § 322.5(a) and Regulation O, 12 C.F.R. § 1015.5(a).

## COUNT IV

### Material Misrepresentations

61.     In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants, in violation of the MARS Rule, 16 C.F.R. § 322.3(b)(1)-(2), and Regulation O, 12 C.F.R. § 1015.3(b)(1)-(2), have misrepresented, expressly or by implication, material aspects of that service, including, but not limited to:

    a.     Defendants' likelihood of obtaining a modification of mortgage loans for consumers that will make their payments substantially more affordable;

    b.     Defendants' likelihood of obtaining a modification of mortgage loans for consumers that will make their payments substantially more affordable as a result of a loan audit provided by Defendants; and

    c.     The amount of time it will take the mortgage assistance relief service provider to accomplish any represented service or result.

## COUNT V

### Failure to Disclose

62.     In numerous instances, in connection with the offering and sale of mortgage assistance relief services, Defendants have failed to make the following disclosures:

    a.     in all general commercial communications —

        i.     "[Name of company] is not associated with the government, and our service is not approved by the government or your lender," in violation of the MARS Rule, 16 C.F.R. § 322.4(a)(1), and Regulation O, 12 C.F.R. § 1015.4(a)(1); and

        ii.     "Even if you accept this offer and use our service, your lender may not agree to change your loan," in violation of the MARS

Rule, 16 C.F.R. § 322.4(a)(2), and Regulation O, 12 C.F.R. § 1015.4(a)(2);

b.  in all consumer-specific commercial communications —

i.  "You may stop doing business with us at any time.  You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer].  If you reject the offer, you do not have to pay us.  If you accept the offer, you will have to pay us [insert amount or method for calculating the amount] for our services," in violation of the MARS Rule, 16 C.F.R. § 322.4(b)(1), and Regulation O, 12 C.F.R. § 1015.4(b)(1);

ii.  "[Name of company] is not associated with the government, and our service is not approved by the government or your lender," in violation of the MARS Rule, 16 C.F.R. § 322.4(b)(2), and Regulation O, 12 C.F.R. § 1015.4(b)(2);

iii.  "Even if you accept this offer and use our service, your lender may not agree to change your loan," in violation of the MARS Rule, 16 C.F.R. § 322.4(b)(3), and Regulation O, 12 C.F.R. § 1015.4(b)(3); and

iv.  "If you stop paying your mortgage, you could lose your home and damage your credit," in violation of the MARS Rule, 16 C.F.R. § 322.4(c), and Regulation O, 12 C.F.R. § 1015.4(c).

## CONSUMER INJURY

63.  Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the MARS Rule and Regulation O.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the

public interest.

## THIS COURT'S POWER TO GRANT RELIEF

64.    Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

65.    Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 626 of the Omnibus Act authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the MARS Rule, including the rescission or reformation of contracts, and the refund of money.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, the Omnibus Act, and the Court's own equitable powers, requests that the Court:

A.    Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action, and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions, and an order freezing assets;

B.    Enter a permanent injunction to prevent future violations of the FTC Act and the MARS Rule/Regulation O by Defendants;

C.    Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act and the MARS Rule/Regulation O, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten

monies; and

D.    Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Date: _6/18_, **2013**                    Respectfully submitted,

**David C. Shonka**
Acting General Counsel
Federal Trade Commission, Washington, D.C.

**JON MILLER STEIGER**
Director, East Central Region

_____

**STEVEN W. BALSTER**
IL Bar No. 6189072, sbalster@ftc.gov

**JONATHAN L. KESSLER**
CO Bar No. 15094, jkessler@ftc.gov

**MARIA DEL MONACO**
OH Bar No. 0067930, mdelmonaco@ftc.gov

Federal Trade Commission
1111 Superior Avenue, Suite 200
Cleveland, Ohio 44114
(216) 263-3401 (Balster)
(216) 263-3436 (Kessler)
(216) 263-3405 (Del Monaco)
(216) 263-3426 (FAX)

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

| | |
|---|---|
| **Loan Modification Notification** | **Code** MOD 12711860 |

File Number
MOD 12711860

| | |
|---|---|
| Contact Phone Number (800) 983-2606 | **Property State** IL |
| Mortgage Assistance 3108 State Route 59 Ste 124-267 Naperville, IL 60564 | **Property Type:** RESIDENTIAL |
| | **Notice Type:** 010-M |
| Personal ID Number MOD 12711860 | **Subject** Home Retention |
| Property Address and Zip Code    15    23 Brendan ▮▮▮▮▮ Oak Park IL 60304-1610 | **RE:** **Mortgage Reduction Program** |

| State IL | **Loan Modification** | Your Mortgage Loan | Total Loan Amount $ 180982 |
|---|---|---|---|

Form 010-M

**NOTICE REGARDING MORTGAGE REDUCTION**    **2012**
**YOUR IMMEDIATE PARTICIPATION IS RECOMMENDED**   Issued Date. February 18, 2012

PLEASE READ ENTIRE DOCUMENT CAREFULLY

Based on your mortgage lender information and your property profile provided to us you may be qualified for loan modification. This includes the following:

1. **Lower your monthly mortgage payments.**
2. **Lower your interest rate to as low as 2% fixed rate, 30 or 40 year term.**
3. **Modify your ARM or Option ARM into a lower fixed rate.**
4. **Repair your credit score..**
5. **Eliminate or reduce delinquent payments.**
6. **Reduce the principal of your second mortgage.**
7. **Discounted pay-off or forbearance amounts.**

### WHAT YOU NEED TO DO

## Please call us at Toll Free: (800) 983-2606 for you free consultation

### YOU MAY FORFEIT LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION

### <u>WE CAN HELP SAVE YOUR HOME</u>

**Call: (800) 360-3782**
10:00 AM EST TO 10:00 PM EST (MON-FRI)
11:00 AM EST TO 5:00 PM EST (SAT)

**Se Habla Espanol**

**ATTACHMENT A**

Fax Back to 1- 888 - 755 - 3386 to receive a call back within 24 hours

**Page 23**

Please indicate best time to call _____ Cell Phone _____ Home Phone _____

Email address _____ @_____ By _____ Date ___/___/_____

Attorney advertising

| File Number<br>MOD 148007 | | | Loan Modification Notification | | Code    MOD 148007 |
|---|---|---|---|---|---|
| Contact Phone Number<br>(800) 896-9151 | | | Property State<br>MI | | |
| Modification Department<br>626 RXR Corp Plaza 6669<br>Uniondale, NY 11556 | | | Property Type:    RESIDENTIAL | | |
| | | | Notice Type:    010-M | | |
| Personal ID Number    MOD 148007 | | | Subject  **Payment Lower Mortgage** | | |
| Property Address and Zip Code    50    79<br>սիսիհ.իսիհ.իսիհ.իսիհ.իսիհ.իսիհ.իսիհ.իսիհ.իսիհ<br>Kelli ▮▮▮▮▮<br>Mayville MI 48744-9428 | | | **RE:**<br><br>**Available Mortgage Reduction Program** | | |
| State<br>MI | **Loan Modification** | | Your Mortgage Loan | | Total Loan Amount<br>$  111869 |

Form  010-M

## MORTGAGE REDUCTION NOTIFICATION
## YOUR IMMEDIATE PARTICIPATION IS REQUIRED

**2011**

Issued Date January 24, 2011

PLEASE READ ENTIRE DOCUMENT CAREFULLY

Based on your payment status you pre-determined for mortgage assistance/loan modification in conjunction with the U.S. Government  HAMP(Home Affordable Modification Program) guidelines.People who qualify for the program may receive

1. **Lower  monthly mortgage payments.**
2. **Reduced interest rates  as low as 2-3% on a fixed , 30 year term.**
3. **Access to more affordable insurance program which can reduce your homeowner's,automobile,medical & other policies by as much as 30-40%**
4. **Free re-assessment of your property value which may lead to reduced property taxes**
5. **Personal coaching from qualified financial planners to assit with budgeting and investment advice.**
6. **Free income tax preparation.**
7. **Improved credit rating.**
8. **And much more**

Thousands of homeowners have taken advantage of this oppourtinity and have reduced their monthly mortgage payment by 30-60%

However due to the statute of limitations and government program deadlines time  is  limited.
It is extremely important that you contact us today in order to take advantage of this oppourtinity.

## CALL US TODAY AND TAKE CONTROL OF YOUR FINANCIAL FUTURE
## Toll Free: (800) 896-9151

Se Habla Espanol

### PLEASE REFERENCE THE CODE NUMBER LISTED ABOVE WHEN SPEAKING WITH CONSULTANT

BUSINESS HOURS: 10.00 AM EST TO 10 PM EST (MON-FRI)

Fax Back to 1- 888- 880-9710 to receive a call back within 24 hours

Please Indicate best time to call _____ Cell Phone _____ _____ Home Phone ____ _____

Email Address _____ _____ @_____ By_____ _____ Date___/___/_____

This product or service has not been approved or endorsed by any government agency and this offer is not being made by an agency of government.

Legal Advertisment

**ATTACHMENT B**