**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | Case No. SA CV 13-919 DOC (RNBx) |
| Plaintiff, | |
| v. | |
| **A TO Z MARKETING, INC.,** a Nevada corporation, also dba Client Services, *et al.*, | **PRELIMINARY INJUNCTION AS TO DEFENDANT BACKEND, INC.** |
| Defendants. | |

On June 18, 2013, the Federal Trade Commission (FTC or Commission), filed PLAINTIFF FEDERAL TRADE COMMISSION'S COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF (Doc. 1) (Complaint) seeking temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief. The Complaint alleged that the Defendants had violated and were violating the Federal Trade Commission Act, 15 U.S.C. § 41 *et.*

*seq.* (FTC Act), and the Mortgage Assistance Relief Services Rule, 16 C.F.R. Part 322 (MARS Rule), recodified as Mortgage Assistance Relief Services, 12 C.F.R. Part 1015 (Regulation O), in connection with the marketing and sale of mortgage assistance relief services.  With its Complaint, the Commission requested, and on June 19, 2013, the Court issued, its TEMPORARY RESTRAINING ORDER INCLUDING AN ASSET FREEZE AND LIMITS ON USING ASSETS, APPOINTMENT OF A RECEIVER, IMMEDIATE ACCESS TO BUSINESS PREMISES, LIMITED EXPEDITED DISCOVERY, AND AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE (Doc. 13) (TRO).  The TRO ordered the Defendants to show cause, if there is any, why a preliminary injunction should not be entered, and set a hearing for July 1, 2013, (Doc. 13, p. 33 of 60), which was later advanced to June 28, 2013 (Doc. 18).

On June 27, the Temporary Receiver filed a Preliminary Report (Doc. 33) focusing on Defendants' operations.  On June 28, after considering the filings and the statements of the Receiver and the attorneys for the FTC and Backend, Inc., the Court extended the TRO and continued the hearing until July 8 (Doc. 41).  The same day, the Court also granted the Temporary Receiver's application for instructions, confirming the Temporary Receiver's determination that certain additional entities were part of the Receivership Estate (Doc. 50).

On July 8, the Court considered further statements of the Receiver and the attorneys for the FTC and Backend, Inc.  Now having concluded that good cause exists for the entry of a Preliminary Injunction against Defendant Backend, Inc.,

**THEREFORE, IT IS HEREBY ORDERED** that the FTC's Motion for a Preliminary Injunction is **GRANTED** as set forth below.

**FINDINGS OF FACT**

1      This Court has jurisdiction over the subject matter of this case and of the parties.  Venue in this District is proper.

2      There is good cause to believe that Defendant Backend, Inc. (Backend), has engaged in, and is likely to engage in, acts and practices that violate Section 5(a) of the FTC Act and the MARS Rule.

3      There is good cause to believe that immediate and irreparable harm will result from Backend's continuing violations of Section 5(a) of the FTC Act and of the MARS Rule.

4      There is good cause to believe that immediate and irreparable damage to this Court's ability to grant effective final relief for consumers in the form of monetary restitution and disgorgement of ill-gotten gains will occur from the transfer, dissipation, or concealment by Backend of its assets or business records unless Backend is immediately restrained and enjoined by Order of this Court.

5      There is good cause for continuing the Receiver over Backend and related entities.

**DEFINITIONS**

For purposes of this Order, the following definitions apply:

A.      **"Assisting others"** includes, but is not limited to:

1      Performing customer service functions, including, but not limited to, receiving or responding to consumer complaints;

2      Formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including, but not limited to, any telephone sales script, direct mail solicitation, or the design, text, or use of images of any Internet website, email, or other electronic communication;

3      Formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including, but not limited to, web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

4      Providing names of, or assisting in the generation of, potential customers;

5      Performing marketing, billing, or payment services of any kind; and

6      Acting or serving as an owner, officer, director, manager, or principal of any person.

B.     **"Document"** and **"Electronically Stored Information"** are synonymous in meaning and equal in scope to the usage of the terms in Rule 34(a) of the Federal Rules of Civil Procedure and include but are not limited to:

1      The original or a true copy of any written, typed, printed, electronically stored, transcribed, taped, recorded, filmed, punched, or graphic matter or other data compilations of any kind, including, but not limited to, letters, email or other correspondence, messages, memoranda, interoffice communications, notes, reports, summaries, manuals, magnetic tapes or discs, tabulations, books, records, checks, invoices, work papers, journals, ledgers, statements, returns, reports, schedules, or files; and

2      Any electronically stored information stored on any computer (including, but not limited to, any server, workstation, or desktop, laptop, notebook, or tablet computer), mobile communications device (including, but not limited to, BlackBerrys, iPhones, and Smart Phones of any type or brand), flash drives, personal digital assistants, or any other electronic

storage media, whether assigned to individuals or in pools of computers available for shared use, or personally owned but used for work-related purposes; backup disks and tapes, archive disks and tapes, and other forms of offline storage, whether stored onsite with the computer used to generate them, stored offsite in another company facility, or stored, hosted, or otherwise maintained offsite by a third-party; and computers and related offline storage used by Backend or Backend's participating associates, which may include persons who are not employees of the company or who do not work on company premises.

C.      **"Electronic Data Host"** means any person in the business of storing, hosting, or otherwise maintaining electronically stored information.

D.      **"Financial Institution"** means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

E.      **"Mortgage assistance relief product or service"** means any product, service, plan, or program, offered or provided to the consumer in exchange for consideration, that is represented, expressly or by implication, to assist or attempt to assist the consumer with any of the following:

1       stopping, preventing, or postponing any mortgage or deed of trust foreclosure sale for the consumer's dwelling, any repossession of the consumer's dwelling, or otherwise saving the consumer's dwelling from foreclosure or repossession;

2       negotiating, obtaining, or arranging a modification of any term of a dwelling loan, including a reduction in the amount of interest, principal balance, monthly payments, or fees;

3      obtaining any forbearance or modification in the timing of payments from any dwelling loan holder or servicer on any dwelling loan;

4      negotiating, obtaining, or arranging any extension of the period of time within which the consumer may (i) cure his or her default on a dwelling loan, (ii) reinstate his or her dwelling loan, (iii) redeem a dwelling, or (iv) exercise any right to reinstate a dwelling loan or redeem a dwelling;

5      obtaining any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling; or

6      negotiating, obtaining, or arranging (i) a short sale of a dwelling, (ii) a deed-in-lieu of foreclosure, (iii) or any other disposition of a dwelling other than a sale to a third party that is not the dwelling loan holder.

The foregoing shall include any manner of claimed assistance, including, but not limited to, auditing or examining a consumer's mortgage or home loan application, offering to provide or providing legal services, or offering to sell a consumer a plan or subscription to a service that provides such assistance.

F.      **"Person"** means any individual and any partnership, corporation, limited liability company, association, or other entity, however formed or organized.

G.      **"Receivership Defendants"** means A to Z Marketing, Inc., Apex Members, LLC, Apex Solutions, Inc., Backend, Inc., Expert Processing Center, Inc., Smart Funding Corp., William D. Goodrich, Atty, Inc., Millennium Law Center, P.C., SC Law Group, Legal Marketing Group, Inc., dba Legal Marketing Group, Interstate Law Group, Accredited Law Group, Backend Services, Inc., Nationwide Law Center, United States Law Center, Mortgage Modification Center,

Emax Loans, Inc., as well as any affiliates and subsidiaries that conduct any business related to the Receivership Defendants' provision of MARS and that the Receiver has reason to believe are owned or controlled in whole or in part by any of the Defendants.

H.    **"Backend Receivership Defendants"** means Backend, Inc., Millennium Law Center, P.C., SC Law Group, Legal Marketing Group, Inc., dba Legal Marketing Group, Interstate Law Group, Accredited Law Group, Backend Services, Inc., Nationwide Law Center, United States Law Center, Mortgage Modification Center, Emax Loans, Inc., as well as any affiliates and subsidiaries that conduct any business related to Backend's provision of MARS and that the Receiver has reason to believe are owned or controlled in whole or in part by Backend.

## I.  PROHIBITED REPRESENTATIONS

**IT IS ORDERED THAT** Backend and Backend's officers, agents, servants, employees, and attorneys and all others in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are temporarily restrained and enjoined from falsely representing, or assisting others who are falsely representing, expressly or by implication, any of the following:

A.    That Backend or any other person generally will obtain for consumers mortgage loan modifications that will make consumers' payments substantially more affordable, or will help consumers avoid foreclosure;

B.    That Backend or any other person, as a result of various loan audits, including a forensic loan audit, generally will obtain for consumers mortgage loan

modifications that will make consumers' payments substantially more affordable, or will help consumers avoid foreclosure;

C.     The amount of time it will take the mortgage assistance relief service provider to accomplish any represented service or result.

## II.  PROHIBITION AGAINST COLLECTING ADVANCE FEES

**IT IS FURTHER ORDERED THAT** Backend and Backend's officers, agents, servants, employees, and attorneys and all others in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the telemarketing, advertising, marketing, promotion, offering for sale or sale of any mortgage assistance relief product or service or any other credit- or debt-related good or service, are temporarily restrained and enjoined from asking for or receiving payment before the consumer has executed a written agreement between the consumer and the creditor, loan holder, or servicer of secured or unsecured debt that incorporates the offer obtained by Backend on the consumer's behalf.

## III. DISCLOSE INFORMATION REQUIRED BY THE MARS RULE

**IT IS FURTHER ORDERED THAT** Backend and Backend's officers, agents, servants, employees, and attorneys and all others in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are temporarily restrained and enjoined from

A.     Failing to make the following disclosure in all general and consumer-specific commercial communications: "[Name of Company] is not associated with the government, and our service is not approved by the government

or your lender," in violation of 16 C.F.R. §§ 322.4(a)(1) and 322.4(b)(2), recodified at 12 C.F.R. §§ 1015.4(a)(1) and 1015.4(b)(2);

  B.  Failing to make the following disclosure in all general and consumer-specific commercial communications: "Even if you accept this offer and use our service, your lender may not agree to change your loan," in violation of 16 C.F.R. § 322.4(a)(2) and 322.4(b)(3), recodified at 12 C.F.R. § 1015.4(a)(2) and 1015.4(b)(3);

  C.  Failing to make the following disclosure in all consumer-specific commercial communications:

> You may stop doing business with us at any time.  You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer].  If you reject the offer, you do not have to pay us.  If you accept the offer, you will have to pay us [insert amount or method for calculating the amount] for our services.

in violation of 16 C.F.R. § 322.4(b)(1), recodified at 12 C.F.R. § 1015.4(b)(1).  For the purposes of this Section III, the amount "you will have to pay" shall consist of the total amount the consumer must pay to purchase, receive, and use all of the mortgage assistance relief products or services that are the subject of the sales offer, including but not limited to, all fees and charges;

  D.  Failing, in all general commercial communications, consumer-specific commercial communications, and other communications in cases where Backend or any of Backend's officers, agents, servants, employees, or attorneys has represented, expressly or by implication, in connection with the advertising, marketing, promotion, offering for sale, or performance of any mortgage assistance relief product or service, that the consumer should temporarily or permanently discontinue payments, in whole or in part, on a dwelling loan, to place clearly and

prominently, and in close proximity to any such representation the following disclosure: "If you stop paying your mortgage, you could lose your home and damage your credit rating," in violation of 16 C.F.R. § 322.4(c), recodified at 12 C.F.R. § 1015.4(c).

## IV.  PRESERVATION OF RECORDS AND TANGIBLE THINGS

**IT IS FURTHER ORDERED THAT** Backend Receivership Defendants and any of the officers, agents, servants, employees, and attorneys and all others in active concert or participation with any Backend Receivership Defendant, who receive actual notice of this Order, whether acting directly or indirectly, are temporarily restrained and enjoined from destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of or rendering inaccessible, in any manner, directly or indirectly, any documents or records that relate to the business practices of or business or personal finances of any Backend Receivership Defendant or a person directly or indirectly under the control of Backend Receivership Defendant.

## V. PROHIBITION ON RELEASE OF CONSUMER INFORMATION

**IT IS FURTHER ORDERED THAT,** except as required by a law enforcement agency, law, regulation or court order, Backend and Backend's officers, agents, servants, employees, and attorneys and all others in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are temporarily restrained and enjoined from disclosing, using, or benefitting from consumer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a consumer's account (including a credit card, bank, or other financial account), of any person which Backend obtained prior to entry of this Order in connection with any mortgage assistance relief product or service.

## VI. DISABLEMENT OF WEBSITES AND PRESERVATION OF ELECTRONICALLY STORED INFORMATION

**IT IS FURTHER ORDERED THAT**, immediately upon service of this Order upon them (1) any person hosting any Internet website or server for, or on behalf of, Backend, and (2) Backend and Backend's officers, agents, servants, employees, and attorneys and all others in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, shall:

A.     Immediately take any necessary steps to render inaccessible to the public any Internet website used by Backend for the advertising, marketing, promotion, offering for sale, sale, or provision of any mortgage assistance relief

product or service, and containing statements or representations prohibited by Section I of this Order; and

B.     Prevent the alteration, destruction or erasure of (1) any Internet websites used by Backend for the advertising, marketing, promotion, offering for sale, sale, or provision of any mortgage assistance relief product or service, by preserving such websites in the format in which they are maintained currently, and (2) any electronically stored information stored on behalf of Backend or entities in active concert or participation with any of them.

## VII.  SUSPENSION OF INTERNET DOMAIN NAME REGISTRATIONS

**IT IS FURTHER ORDERED THAT**, any domain name registrar or other person shall suspend the registration of any Internet website used by Backend for the advertising, marketing, promotion, offering for sale, sale, or provision of any mortgage assistance relief product or service, and containing statements or representations prohibited by Section I of this Order, and provide immediate notice to the FTC and to the Receiver of any other Internet domain names registered by Backend or Backend's officers, agents, servants, employees, and attorneys and all others in active concert or participation with any of them.

## VIII. ASSET FREEZE

**IT IS FURTHER ORDERED THAT** the Backend Receivership Defendants and their officers, agents, servants, employees, and attorneys and all others in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are temporarily restrained and enjoined from directly or indirectly:

A.      Selling, assigning, transferring, converting, loaning, conveying, encumbering, concealing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any assets that are:

1        in the possession, actual or constructive, of Backend;

2        owned or controlled by, held in whole or in part for the benefit of, or subject to access by, Backend; or

3        in the actual or constructive possession of, owned or controlled by, subject to access by, or belonging to any person who is directly or indirectly owned, managed, or under the control of Backend;

B.      Opening, or causing to be opened, any safe deposit boxes titled in the name of or subject to access by Backend;

C.      Cashing any checks from consumers, clients, or customers of any Defendant;

D.      Failing to disclose to the FTC and to the Receiver, immediately upon service of this Order, information that fully identifies each known asset of Backend and the person holding such asset, including, without limitation, the person's name, address, and telephone number, the number of an account, and the name under which an account or other asset is held;

*Provided*, that this Section VIII shall be construed to include (a) all of the Backend Receivership Defendants' Assets existing as of the date of entry of the TRO, and (b) as to Assets acquired by the Backend Receivership Defendants after the date of entry of the TRO, those Assets derived directly or indirectly from the activities which are the subject of this action or from activities prohibited by this Order;

*Provided, further*, that this Section VIII applies as well to Amir Montazeran, as ordered by this Court in the Order Authorizing Receiver's Immediate Possession

of Business Premises of Additional Receivership Defendants and Confirming Actions Taken by Receiver to Freeze Assets (Doc. 50).

***Provided further, however,*** that this Section VIII does not prohibit the repatriation of foreign assets as required in Section XII of this Order.

## IX.  HANDLING OF DOCUMENTS, RECORDS, AND ASSETS BY THIRD PARTIES

**IT IS FURTHER ORDERED THAT**, any person, including but not limited to any financial institution, electronic data host, or payment processor, who receives actual notice of this Order, by personal service, facsimile, email, or otherwise, who has, or at any time since January 1, 2010, has had, possession, custody, or control of any documents, records, or assets belonging to, in the name of, for the benefit of, subject to access or use by, or under the signatory power of any Backend Receivership Defendant shall:

A.      Hold, preserve, and retain within such person's control, and prohibit the withdrawal, removal, alteration, transfer, encumbrance, disbursement, dissipation, sale, liquidation, or other disposal of such documents, records, or assets except as directed in writing by the Receiver as to any property of any Backend Receivership Defendant;

B.      Provide the Receiver and the FTC immediate access to electronically stored information, for forensic imaging, that is stored, hosted, or otherwise maintained on behalf of any Backend Receivership Defendant;

C.      Deny access to any safe deposit boxes that are either titled in the name of, individually or jointly, or subject to access or control by, any Backend Receivership Defendant; and

D.     Provide to counsel for the FTC and the Receiver, within two (2) days of receipt of this Order, a sworn statement setting forth:

1     a description of or other identification of the documents, records, or assets;

2     the balance of each such account and the value of each other asset as of the close of business on the day on which this Order is served;

3     the location of any safe deposit box that is either titled in the name of, individually or jointly, or is otherwise subject to access or control by Backend;

4     if any asset, including any account at any financial institution, has been closed or  removed, the date closed or removed, the balance on that date, and the name of the person to whom the account or asset was remitted or transferred;

E.     Provide counsel for the FTC and the Receiver, within seven (7) days after being served with a request, with copies of documents or records and copies of documents pertaining to assets, including but not limited to:  account statements, account applications, signature cards, checks, deposit tickets, transfers to and from the accounts, wire transfers, all other debit and credit instruments or slips, 1099 forms, and safe deposit box logs; and

F.     Cooperate with all reasonable requests of the FTC and the Receiver relating to this Order's implementation, including but not limited to transferring funds at the Receiver's discretion.

G.     **IT IS FURTHER ORDERED THAT** this Section IX shall apply to both existing documents, records and assets and to documents, records, and assets acquired after the date of entry of this Order.  This Section IX does not prohibit the Repatriation of Foreign Assets, as required in Section XII of this Order.

## X.  FINANCIAL STATEMENTS AND ACCOUNTING

**IT IS FURTHER ORDERED THAT** Backend, within three (3) days of service of this Order, shall prepare and deliver to counsel for the FTC, to the extent not already provided:  A completed financial statement accurate as of the date of service of this Order upon Backend in the form of Attachment B to the TRO, captioned "Financial Statement of Corporate Defendant" (Doc. 13, p. 46).

## XI.  CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED THAT** pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(1), any consumer reporting agency may furnish to the FTC a consumer report concerning Backend.

## XII.  REPATRIATION OF FOREIGN ASSETS

**IT IS FURTHER ORDERED THAT**, to the extent not already accomplished, within three (3) days following the service of this Order, Backend shall:

A.     Transfer to the territory of the United States and provide the FTC and the Receiver with a full accounting of all assets, documents, and records outside of the territory of the United States that are:

      1     in the possession, actual or constructive, of Backend;

      2     owned or controlled by, held in whole or in part for the benefit of, or subject to access by, Backend; or

      3     in the actual or constructive possession of, owned or controlled by, subject to access by, or belonging to any person who is directly or indirectly owned, managed, or under the control of Backend;

B.     Hold all repatriated assets, documents, and records as required by Section VIII of this Order; and

C.     Provide the FTC access to all records of accounts or assets of Backend held by any financial institution or other person located outside the territorial United States by signing, if not already signed, the Consent to Release of Financial Records attached to this Order as Attachment B and by signing any other documents required by any person, including any financial institution, or other person holding any such asset.

## XIII.  NONINTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED THAT** Backend is temporarily restrained and enjoined from taking any action, directly or indirectly, that may result in the encumbrance or dissipation of foreign assets or in the hindrance of the repatriation required by Section XII of this Order, including, but not limited to:

A.     Sending any communication, including but not limited to any statement, letter, fax, email, text message, wire transmission, or telephone call, or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other person that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all assets have been fully repatriated pursuant to Section XII of this Order; or

B.     Notifying any trustee, protector, or other agent of any foreign trust or other related entities either of the existence of this Order or of the fact that repatriation is required pursuant to a court order, until such time that all assets have been fully repatriated pursuant to Section XII of this Order.

## XIV.  CONTINUATION OF RECEIVER

**IT IS FURTHER ORDERED THAT** the Receivership created by the TRO (Doc. 13) and extended by this Court's Order Authorizing Temporary Receiver's Immediate Possession of Business Premises of Additional Receivership Defendants and Confirming Actions Taken by Receiver to Freeze Assets (Order Extending Receivership) (Doc. 50), shall continue as to the Backend Receivership Defendants until further order of the Court.  Thomas McNamara, the Receiver appointed in the TRO, shall continue as Receiver until further order of this Court.

## XV.  DUTIES AND AUTHORITY OF RECEIVER

**IT IS FURTHER ORDERED THAT** the Receiver is directed and authorized to accomplish the following:

A.    Maintain full control of the Backend Receivership Defendants by removing, as the Receiver deems necessary or advisable, any officer, director, agent, servant, independent contractor or attorney of any Backend Receivership Defendant, including any Defendant, from control of, management of, or participation in, the affairs of any Backend Receivership Defendant;

B.    Maintain exclusive custody, control, and possession of all assets, documents, and electronically stored information of, or in the possession, custody, or under the control of any Backend Receivership Defendant, wherever situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take into possession, hold, and manage all assets and documents of any Backend Receivership Defendant and other persons whose interests are now held by or under the direction, possession, custody, or control of any Backend Receivership Defendant; ***provided, however,*** that the Receiver shall not attempt to collect or

receive any amount from a consumer if the Receiver believes the consumer was a victim of the unlawful conduct alleged in the complaint in this matter;

C.     Take all steps necessary to secure the business premises of any Backend Receivership Defendant.  Such steps may include, but are not limited to, the following, as the Receiver deems necessary or appropriate:

1     changing the locks and disconnecting any computer modems, network access, or other means of access to the computer or other records maintained at that location;

2     obtaining pertinent information from all employees and other agents of any Backend Receivership Defendants, including, but not limited to, the name, home address, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent, and all computer hardware and software passwords, and including the completion of a questionnaire presented by the Receiver;

3     completing a written inventory of all Backend Receivership Defendant assets;

4     videotaping and/or photographing all portions of any location at which any Backend Receivership Defendant has conducted business or has or has had assets, and;

5     serving and filing this Order;

D.     Conserve, hold, and manage all Backend Receivership Defendant assets, and perform all acts necessary or advisable to preserve the value of those assets, in order to prevent any irreparable loss, damage, or injury to consumers or to creditors of Backend, including, but not limited to, obtaining an accounting of the assets and preventing transfer, unauthorized withdrawal, or misapplication of assets;

E.      Liquidate any and all assets owned by or for the benefit of any Backend Receivership Defendant, as the Receiver deems to be advisable or necessary;

F.      Enter into or break contracts and purchase insurance as the Receiver deems to be advisable or necessary;

G.      Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers who have transacted business with any Backend Receivership Defendant;

H.      Manage and administer the business of any Backend Receivership Defendant until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

I.      Choose, engage, and employ, without prior approval of the Court, attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order.  The Receiver may engage the services of the law firm of which the Receiver is a member;

J.      Make payments and disbursements from the Receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.  The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by any Backend Receivership Defendant prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure assets of any Backend Receivership Defendant, such as rental payments;

K.      Determine and implement measures to ensure that any Backend Receivership Defendant complies with, and prevents violations of, this Order and

all other applicable laws, including, but not limited to, revising sales materials and implementing monitoring procedures;

L.      Institute, defend, compromise, adjust, appear in, intervene in, or become party to any actions or proceedings in state, federal, or foreign courts, including actions or proceedings against any Backend Receivership Defendant or against the Receiver in his role as Receiver, that the Receiver deems necessary or advisable to preserve or recover the assets of any Backend Receivership Defendant or to carry out the Receiver's responsibilities under this Order;

M.      Conduct the business of any Backend Receivership Defendant in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate; ***provided, however***, that the conduct of the business, if done at all, is conditioned upon the Receiver's good faith determination that the business can be lawfully operated at a profit using the assets of the receivership estate;

N.      Open one or more bank accounts in the Central or Southern District of California as designated depositories for funds of any Backend Receivership Defendant.  The Receiver shall deposit all funds of any Backend Receivership Defendant in such a designated account and shall make all payments and disbursements from the receivership estate from such account(s);

O.      Maintain accurate records of all receipts and expenditures that he makes as Receiver;

P.      Maintain the chain of custody of all of any Backend Receivership Defendant's assets, documents, property, and records in his possession; and

Q.      Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency.

## XVI.  COOPERATION WITH RECEIVER

**IT IS FURTHER ORDERED THAT** any Backend Receivership Defendant and its officers, agents, servants, employees, and attorneys and all others in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, shall fully cooperate with and assist the Receiver.  Such cooperation and assistance shall include, but not be limited to:

A.   Providing any information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order;

B.   Providing any username or password and executing any documents required to access any computer or electronic files in any medium, including but not limited to information stored, hosted, or otherwise maintained by an electronic data host;

C.   Providing the Receiver with access to any Documents belonging to or in the custody or control of any Backend Receivership Defendant;

D.   Refraining from advising any person who owes money to any Backend Receivership Defendant to pay the debt to anyone other than to the Receiver; and

E.   Refraining from transacting any of the business of any Backend Receivership Defendant except under the direction of the Receiver.

## XVII.  COMPENSATION FOR RECEIVER

**IT IS FURTHER ORDERED THAT** the Receiver and all personnel hired by the Receiver as authorized by this Order are entitled to reasonable compensation and expenses for the performance of duties pursuant to this Order from the assets

of the Receivership Defendants. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XVIII.  RECEIVER'S REPORTS

**IT IS FURTHER ORDERED THAT** the Receiver shall report to this Court periodically regarding:  (1) the steps taken by the Receiver to implement the terms of this Order;  (2) the value of all liquidated and unliquidated assets of the Backend Receivership Defendants;  (3) the sum of all liabilities of the Backend Receivership Defendants;  (4) the Receiver's assessment of whether any of the Backend Receivership Defendants can be operated profitably and legally;  (5) any future steps the Receiver recommends;  and (6) any other matters which the Receiver believes should be brought to the Court's attention;  ***provided, however,*** that if any of the required information would hinder the Receiver's ability to pursue receivership assets, the portions of the Receiver's report containing such information may be filed under seal and not served on the parties.

## XIX.  RECEIVER'S BOND

**IT IS FURTHER ORDERED THAT** the bond filed with the Clerk of this Court by the Receiver pursuant to the TRO shall remain in effect to ensure that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs.

# XX.  STAY OF ACTIONS

**IT IS FURTHER ORDERED THAT:**

A.      Except by leave of this Court, during pendency of the Receivership created by this Order, any Backend Receivership Defendant and all other persons and entities are stayed from taking any action to establish or enforce any claim, right, or interest for, against, in, on behalf of, or in the name of, any Backend Receivership Defendant or any of its subsidiaries, affiliates, partnerships, assets, or documents, or the Receiver or the Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following:

1       Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

2       Accelerating the due date of any obligation or claimed obligation; filing or enforcing any lien; taking or attempting to take possession, custody, or control of any asset; attempting to foreclose, forfeit, alter, or terminate any interest in any asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

3       Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not; or

4       Doing any act or thing whatsoever to interfere with the Receiver taking custody, control, possession, or management of the assets or documents subject to this Receivership, or to harass or interfere with the Receiver in any way, or to interfere in any manner with the exclusive

jurisdiction of this Court over the assets or documents of any Backend Receivership Defendant;

B.     This Section XX does not stay:

1     The commencement or continuation of a criminal action or proceeding;

2     The commencement or continuation of an action or proceeding by a bar association to enforce its police or regulatory powers;

3     The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

4     The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or

5     The issuance to any Backend Receivership Defendant of a notice of tax deficiency.

## XXI.  MONITORING

**IT IS FURTHER ORDERED THAT:**

Agents or representatives of the FTC may contact Backend directly or anonymously for the purpose of monitoring compliance with this Order, and may record any communications that occur in the course of such contacts.

## XXII.  RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED THAT** this Court shall retain jurisdiction of this matter for all purposes of construction, modification, and enforcement of this Order.


**SO ORDERED,** this 12th day of July, 2013.


_____

DAVID O. CARTER

United States District Judge